| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of URATA & SONS CONCRETE, INC., | No. 2:17-cv-02635-MCE-AC |
| Use-Plaintiff / Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| GILBANE FEDERAL, a California corporation; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, | |
| Defendants. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Through this action, the United States of America for the Use and Benefit of Urata & Sons Concrete, Inc., and Urata & Sons Concrete Inc. ("Plaintiff") seek confirmation and enforcement of an arbitration award against Defendants Gilbane Federal ("Gilbane") and Travelers Casualty and Surety Company of America (collectively, "Defendants"). Presently before the Court is Plaintiff's Motion for Order Lifting Stay, Confirming Final Arbitration, and Entry of Judgment. ECF No. 15. Plaintiff also moves for attorney's fees and costs. Concurrently before the Court is Defendants' Counter-Motion to Vacate

///

///

1

Arbitration Award. ECF No. 17. For the reasons set forth below, Plaintiff's Motion is GRANTED and Defendants' Counter-Motion is DENIED.[1]

**BACKGROUND**[2]

In 2014, Gilbane entered into a written design-build construction contract with the United States Army Corps of Engineers ("USACE") for the construction of a general purpose warehouse at the Defense Distribution Depot in Tracy, California (the "Project"). In May 2015, Plaintiff and Gilbane entered into a written subcontract whereby Plaintiff agreed to provide and install specific concrete work according to Gilbane's plans and specifications (the "Subcontract"). The Subcontract further provided that Plaintiff "shall perform all Work required to complete the Project in strict accordance with the [Statement of Work documents]" and that Plaintiff "agrees to be fully bound by all [Statement of Work] Documents to be later provided." Ex. 1, ECF No. 1, at 15. The original Project specifications did not require the use of air entrained concrete. After the Subcontract was executed, Gilbane provided Plaintiff with revised specifications, which were changed to require air entrained concrete. At the same time, a note was included stating that "[e]ntrained air should not be used for concrete to be given a smooth, dense, hard-troweled finish because blistering and delamination may occur." In December 2015, Gilbane provided Plaintiff with its Issued for Construction ("IFC") specifications, which required Plaintiff to install the warehouse slab on grade with a "smooth, dense hard-trowel finish, along with the placement of air entrained concrete," thus creating a design conflict. See Arbitration Award, ECF No. 15-2, at 20.

///
///

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[2] The following statement of facts is taken, sometimes verbatim, from the Complaint. ECF No. 1.

2

In March 2016, Plaintiff submitted air entrained concrete mix designs to Gilbane, who approved those designs for use in areas with a hard trowel finish such as the warehouse slab on grade. Plaintiff notified Gilbane of additional costs associated with the changed concrete specifications, and alerted Gilbane to the design conflict between the requirements for air entrained concrete and the hard trowel finish, which Gilbane acknowledged. Gilbane communicated with USACE about removing air entrainment from the concrete mix design. See Arbitration Award, ECF No. 15-2, at 9.

In August 2016, Plaintiff and Gilbane executed Change Order No. 1 to the Subcontract, which included the increased cost for air entrained concrete in the areas that did not require a hard trowel finish. Based on their prior discussions and written memorialization, Plaintiff and Gilbane excluded from Change Order No. 1 the cost for the air entrained concrete in the warehouse slab on grade, reserving the issue for future adjustment if the specification requirement was not changed by USACE.

Plaintiff was scheduled to perform its concrete work from December 2016 to February 2017. Having not received any notice or revisions to the specifications that deleted the air entrainment requirement from the warehouse slab on grade, Plaintiff began performing its work in accordance with the specifications, including those requiring the use of air entrained concrete with a hard trowel finish for the warehouse slab on grade. Gilbane was responsible for quality control on the Project and was fully aware that Plaintiff was placing the warehouse slab on grade in accordance with the specifications and the approved mix design and participated in that placement by, among other things, testing the concrete at the time of delivery for compliance with the approved mix design and signing off on the placement of the concrete for the warehouse slab on grade. After completion, Plaintiff billed Gilbane for this concrete installation, and Gilbane paid Plaintiff for its work, excluding retention.

It was not until after work under the Subcontract was complete that Plaintiff learned USACE actually approved a design change deleting the air entrainment from the warehouse slab on grade prior to the execution of Change Order No. 1; Gilbane never

conveyed or provided any such approval or design change to Plaintiff in any form. Further, USACE alerted Gilbane to the occurrence of delamination of the warehouse slab on grade due to the air entrainment. Gilbane issued cure notices to Plaintiff, stating the delamination resulted from Plaintiff's unauthorized use of air entrained concrete for the warehouse slab on grade and Plaintiff must remedy its non-compliance by replacing the entire warehouse slab on grade. Plaintiff denied responsibility for the issues, and Gilbane refused to pay Plaintiff amounts due for work completed.

On December 18, 2017, Plaintiff filed this action against Defendants for, among other things, breach of contract and Miller Act violations. ECF No. 1. Subsequently, this Court entered an order staying the action pending arbitration, pursuant to the parties' stipulation. ECF No. 8. Kenneth C. Gibbs (the "Arbitrator") served as the arbitrator for this dispute, and arbitration took place on November 12-14, 2018. ECF No. 15-1. On March 21, 2019, the Arbitrator issued the Final Award (the "Award"), which concluded that Plaintiff's installation of the air entrained concrete constituted performance, or, alternatively, that Plaintiff was excused from performing under the Subcontract. See Arbitration Award, ECF No. 15-2, at 19-24. Plaintiff was awarded the sum of $2,669,018.13, which consisted of: (1) the principal amount of $2,097,055.00; (2) interest of $311,906.53 at the per annum rate of 10%, equivalent to a daily rate of $574.54; (3) costs of $94,959.60; and (4) attorneys' fees pursuant to the Subcontract in the amount of $165,097.00. Id. at 33.

## STANDARD

It is well established that a federal court's review of an arbitrator's decision is "<u>extremely</u> narrow." Stead Motors v. Auto. Machinists Lodge, 886 F.2d 1200, 1208 n.2 (9th Cir. 1990) (emphasis in original), cert. denied, 495 U.S. 946. Courts may vacate an arbitration decision if the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4) (2006). "Arbitrators exceed their powers . . . not when they merely interpret or apply the

4

1  governing law incorrectly, but when the award is completely irrational, or exhibits a
2  manifest disregard of the law." Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727
3  (9th Cir. 2006) (alteration in original) (quoting Kyocera Corp. v. Prudential-Bache Trade
4  Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003)).

Federal courts are not empowered to second guess an arbitrator's findings and will enforce an arbitration award if it represents a "plausible interpretation of the contract in the context of the parties' conduct." United States Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1177 (9th Cir. 2010) (citing Pac. Motor Trucking Co. v. Auto. Machinists Union, 702 F.2d 176, 177 (9th Cir. 1983)). Accordingly, the court must defer to the arbitrator's decision "as long as the arbitrator . . . even arguably construed or applied the contract." Id. (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)). Conversely, an award that directly conflicts with a contract cannot be a "plausible interpretation." Pac. Motor Trucking Co., 702 F.2d at 177.

Thus, as long as the arbitrator's decision "draws its essence from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." Truesdell v. S. Cal. Permanente Med. Grp., 151 F. Supp. 2d 1161, 1173 (C.D. Cal. 2001) (internal quotations omitted) (citing Sheet Metal Workers' Int'l Assoc. Local Union No. 359 v. Madison Indus., Inc. of Ariz., 84 F.3d 1186, 1190 (9th Cir. 1996)). This same deference applies to the particular remedy chosen by the arbitrator. See, e.g., Assoc. of W. Pulp & Paper Workers, Local 78 Rexam Graphic, Inc., 221 F.3d 1085, 1091 (9th Cir. 2000).

///
///
///
///
///
///
///

**ANALYSIS**

**A.     Motion to Confirm/Counter-Motion to Vacate**

The Arbitrator found that Plaintiff's installation of the air entrained concrete constituted performance under the Subcontract. See Arbitration Award, ECF No. 15-2, at 20-22. Defendants base their Counter-Motion to Vacate on belief that the Award was "completely irrational" in that the Arbitrator disregarded key Subcontract provisions and modifications. See ECF No. 17.

The "completely irrational" standard is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement. Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1288 (9th Cir. 2009). An award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions. Bosack v. Soward, 586 F.3d 1096, 1106 (9th Cir. 2009). Here, the Arbitrator reviewed the Subcontract language to find that Plaintiff was required to use air entrained concrete. Specifically, the Arbitrator found that the Subcontract required Plaintiff to perform "in strict accordance" with Gilbane's Statement of Work documents, including future documents such as the IFC specifications. See Arbitration Award, ECF No. 15-2, at 20. Additionally, the Arbitrator found that Gilbane's conduct further supported a finding that Plaintiff performed under the Subcontract, such as Gilbane's rejection of Plaintiff's initial concrete mix for lack of air entrainment and failure to notify Plaintiff that USACE removed the air entrainment requirement. See id. at 20-21.

Defendants contend that the Arbitrator erred in determining Change Order No. 1 was a pricing agreement instead of a change in scope because Change Order No. 1 excluded air from the warehouse slab on grade. Defs.' Counter-Motion, ECF No. 17, at 9. However, the Arbitrator concluded Change Order No. 1 did not change the scope of the Subcontract because Gilbane was still communicating with USACE about

///

removing the air entrainment requirement and Gilbane failed to inform Plaintiff that USACE deleted the requirement. Arbitration Award, ECF No. 15-2, at 20-21.

Ultimately, Defendants have failed to show that the Arbitrator exceeded his power. There is no evidence in the record that the Award failed to draw its essence from the contract therefore rendering it "completely irrational." See Bosack, 586 F.3d at 1106 ("Under this standard of review, we do not decide the rightness or wrongness of the arbitrator's contract interpretation, only whether the panel's decision draws its essence from the contract.") (internal citations and quotation marks omitted). Therefore, the Court finds that the Award should be confirmed, and hereby GRANTS Plaintiff's Motion to Confirm and DENIES Defendants' Counter-Motion to Vacate.[3]

## B. Plaintiff's Request for Additional Fees and Interest

Plaintiff seeks to recover the following: (1) additional attorneys' fees for time associated with filing the instant motion and reply, totaling $16,605, plus $845 for federal court costs; (2) attorneys' fees and costs for enforcement and collection of judgment; (3) prejudgment interest in an amount of $574.54/day from March 21, 2019, to the entry of judgment; and (4) post-judgment interest at the legal rate until satisfaction of the judgment. ECF No. 15. Such recovery is allowed under the Subcontract, the Award, and by law. See Arbitration Award, ECF No. 15-2, at 33. Accordingly, the Court grants Plaintiff's request at the amount estimated by Plaintiff.[4]

///

///

---

[3] Defendants also assert that the Arbitrator's decision manifests an error of law because Plaintiff's performance is not excused under U.S. v. Spearin, 248 U.S. 132 (1918). Although the Arbitrator found Plaintiff would be excused from non-performance, this was not the basis for his decision because he concluded Plaintiff did in fact perform under the Subcontract. See Arbitrator's Award, ECF No. 15-2, at 22 ("[T]he Arbitrator finds that [Plaintiff] performed according to the subcontract. However, even if one accepted Gilbane's argument that [Plaintiff] installed non-conforming concrete, the Arbitrator also finds that [Plaintiff] would be excused from non-performance."). Defendants' disagreement with this alternative analysis is thus insufficient to overturn the Award. See Comedy Club, 553 F.3d at 1290 ("[F]or an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it.").

[4] The Court notes that Defendants failed to address this request for additional fees and interest in both their Counter-Motion and Reply brief. See ECF Nos. 17, 19.

7

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Order Lifting Stay, Confirming Final Arbitration, and Entry of Judgment, ECF No. 15, is GRANTED and Defendants' Counter-Motion to Vacate Arbitration Award, ECF No. 17, is DENIED. The arbitration award is hereby confirmed and enforced. The Clerk of the Court is hereby ordered to enter judgment for Plaintiff and to close this case.

IT IS SO ORDERED.

Dated: November 5, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE